**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  1:19-cv-1951

RICHARD DEQUASIE;
DWAIN PATTILLO;
KATHLEEN PENCE;
KARA RIDLEY;
SANDRA SAENZ; and
MIRANDA TAYLOR,
on behalf of themselves and others similarly
situated,

       Plaintiffs,

  v.

AIR METHODS CORPORATION and
ROCKY MOUNTAIN HOLDINGS, LLC,

       Defendants.

---

## CLASS ACTION COMPLAINT

---

1. Plaintiffs bring this action individually and on behalf of a class of others similarly situated,[1] against Defendants Air Methods Corporation and Rocky Mountain Holdings, LLC. In this case, the Court must address the intersection of the Airline Deregulation Act of 1976's ("ADA") preemption provision, 49 U.S.C. § 41713(b)(1), and Defendant's efforts to collect for emergency helicopter air ambulance transports. Defendants' entered written agreements with some Plaintiffs, and Defendants intentionally incorporated therein an undertaking by which the Court was to set the proper amount of compensation for Defendants, and Defendants refused to exercise one of many available avenues to contract around the Court providing price, yet Defendants

---

[1] For simplicity, rather than reciting "and the Classes" each time Plaintiffs are mentioned, this pleading will refer to Plaintiffs. Such usage includes the Classes Plaintiffs seek represent.

continue to resist the judicial setting of a price for transportation. For the majority of those transported by Defendants without an signed written contract, and because Defendants lack any other legal basis to collect the arbitrary and exorbitant amounts they are asking Plaintiffs to pay, Plaintiffs ask for a declaration by the Court that Defendants cannot collect their exorbitant fees from Plaintiffs.

## **INTRODUCTION**

2.      Plaintiffs bring this proposed class action on behalf of themselves and all others similarly situated, charged by Defendants for the transportation of patients by air ambulance. For individuals like Plaintiffs, first responders or medical personnel generally determine whether a patient needs emergency helicopter transport. The transportation is often arranged, and patients are transported, without their knowledge or express or informed consent, or under the duress of life-threatening or other serious medical conditions that require immediate treatment at a hospital. Given the dire circumstances, express or informed consent or negotiation of essential terms is difficult, if not impossible, because the patient is either unconscious or otherwise incapable of giving meaningful express or informed consent.

3.      Contrary to popular belief, most air ambulance transports are not from the roadside or other accident scene to a hospital. 54% of transports are "inter-facility" (from one hospital to another) with 33% being a "scene response" (on the roadside, for example), and the remainder being for organ transplant or other circumstances. See Fact Sheet and FAQs provided by the Association of Air Medical Services and available online at https://aams.org/member-services/fact-sheet-faqs/.  It is interesting to note that the Fact Sheet provided by the industry does

108614183.1

not include any discussion of the costs of transport or the widespread industry practice of balance billing.

4.      Defendants bill Plaintiffs an amount that vastly exceeds both the cost to provide the transport and the fair market value of the transport. Defendants' own executives admitted in a television interview that the "fair charge" for Defendants' services would be, on average, around $12,000, but Defendants charge four times that amount and more, with the average charge for the named plaintiffs exceeding $47,000, almost four times the "fair charge."

5.      Defendants have initiated collection efforts against Plaintiffs, and, in some instances, Defendants have filed state-court breach of contract claims and other suits against patients. See Exhibit 1, exemplars of Defendants' suits filed in Oklahoma. In this regard, Plaintiffs risk adverse judgments and damage to their credit ratings. *See also* Exhibit 2, "Medical Helicopter Lawsuits on the Rise," Ben Sutherly, *Columbus Dispatch*, May 11, 2015; Exhibit 3, "Air Ambulance Company Charges Big Fees, Hassles, Then Sues Hundreds of Former Patients Who Don't Pay," Adam Walser, ABC News, Mar. 17, 2016. Defendant Air Methods Vice President stated in Exhibit 3 that if "everybody paid their fair share, you know what the charge for this service would be? $12,000." Exhibit 3 at p.3. Yet Defendants routinely sue patients for amounts four or even five times the patient's "fair share." Defendants secured judgment against one of its patients then garnished their bank account for more than $53,000. Exhibit 4, and collected the garnishment form the patient's small business account.

6.      Defendants' legal position is simple: under the Airline Deregulation Act they are vested with plenary power to set whatever price they choose for transportation of patients *in extremis* who have no opportunity to decide whether they want or need transportation, and this

108614183.1

Court, and all other courts, are powerless to decide issues related to the arbitrary and inflated prices imposed after-the-fact by Defendants. The United States District Court for the District of Colorado's initial reaction to Defendants' legal position was "that's crazy." Indeed, it is.

7.    Some named Plaintiffs executed a written contract, but Defendants drafted the written contract without an express provision regarding the prices charged for the transportation by Defendants. Defendants did not inform Plaintiffs or the class regarding the price of the transportation. Defendants do not even provide constructive notice of the price by way of publication of its fee schedule on their web site or otherwise. Their exorbitant prices are only disclosed after-the-fact. See exemplars of Defendants' Authorization and Consent form, attached as Exhibit 5. See also Authorization and Consent signed by Defendants' flight crew member on behalf of Plaintiff Saenz at Exhibit 10, p.2 and behalf of Plaintiff Taylor at Exhibit 11, p.2.

8.    After the transportation is complete Defendants send a statement for the transportation showing a "base rate" and a "mileage" charge (collectively "charged amount") and demand payment from Plaintiffs. The rate that will be charged by Defendants for the "base charge" and "mileage" is known to Defendants prior the transportation, but it is not published on their web site or otherwise disclosed to Plaintiffs. Even in instances where a family member, or even less frequently, a coherent patient themselves, signs a document with Defendants before a transport, that document does not disclose the prices to be charged. The refusal by Defendants to disclose prices is consistent with their longstanding argument that their pricing is some sort of trade secret. However, Defendants ultimately do publicly disclose their pricing to Plaintiffs in their billing statement. As noted by Trump administration officials as recently as June 25, 2019: "Every time one of us goes to a hospital, within a couple of weeks there arrives an explanation of benefits that

108614183.1

contains the list price, the negotiated price, and your out-of-pocket costs. This is not some great state secret out there, that information…just needs to be presented to patients at the right time, in the right format…."[2] Nevertheless, Defendants refuse to disclose their pricing information to prospective transport patients.

9.    Many, if not most, of the persons transported by Defendants are incapable of entering a contract: they are unconscious, in severe distress, or they are medicated. Plaintiffs who did not enter into express contracts fall into a quirky corner of the legal universe affected by the ADA. For individuals without a signed written contract, under existing precedent in the 10th Circuit, there is no way for Defendants to establish any right to collect their exorbitant fees for a breach of contract.[3] Defendants have asserted that any right they have to collect for their services is solely contractual. *Scarlett v. Air Methods,* App. Case No. 18-1247 (10th Cir. Apr. 25, 2019) at p.17 and n.3. The 10th Circuit has held that "breach of contract claims [by Defendants] premised on implied-in-law contracts are necessarily pre-empted for lack of mutual assent." *Id.* at p. 20. Implied-in-fact contracts could theoretically survive pre-emption analysis, but that requires establishing conditions that simply cannot be shown in the circumstances of an emergency transport. *Id.* at 21, 22. To establish an implied-in-fact contract in this instance, the Defendant would have to show that sufficient and detailed discussions were had to infer that the parties had

---

[2] Quoting Health and Human Services Secretary Alex Azar in an Associated Press article by Ricardo Alonso-Zaldivar, "Trump Order Aims to Disclose 'Real' Costs for Health Care," *Journal Record,* June 25, 2019.
[3] Plaintiffs do not agree with the 10th Circuit's analysis of all of the issues decided in Scarlett; however, unless reversed by an *en banc* panel or the Supreme Court, it is the law applicable to this case. The 10th Circuit held that if Defendants sought to collect based on equitable principles, which they have expressly disclaimed, *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013) might operate to limit Defendants' fees to an equitable amount, but so long as Defendants cling exclusively to a contract remedy, *Dan's City,* is not applicable. *Id.* at 17.

an agreement that that agreement include a reasonable expectation that the Court would supply a price term to "effectuate the intensions of the parties or to protect their reasonable expectations," and such an extensive set of discussions is simply impractical where a party to be transported is not capable of signing an express written contract. *Id. at 21.*

10.     The Class will include the patient transported, the legal custodian of the patient (in the case of spouses or minor or mentally disabled patients), the estate of a deceased patient, or any person or entity from whom Defendant has demanded payment for helicopter ambulance transport of themselves or another. It is expected that for each transport, there will be only one class member, though for married couples, it may be both the transported person and their spouse.

11.     The price comprising the charged amount was not disclosed to the Plaintiffs or the Class by Defendants, nor is the price charged agreed to or negotiated by Defendants and the persons charged prior to transportation of the patient.  As such, in the context of a signed written contract, Defendants' express undertaking is to submit to a court the question of the proper amount to be charged for any services provided.

12.     In this action, Plaintiffs, on behalf of themselves, seek a declaration with respect to Plaintiffs' 's legal obligation, if any, with respect to payment to Defendants of the prices charged for the transportation services provided and for the Court to determine the unspecified price term. For those with signed written contracts, Plaintiffs ask the Court to determine the proper price, and for those without signed written contracts, Plaintiffs ask the Court to find that no obligation to pay can exist given preemption analysis under the ADA.

13.     The ADA, 49 U.S.C. § 41713(b)(1) provides:

108614183.1

[A] State, political subdivision of a State…may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.[4]

14.     Defendants send a statement for the charged amount to the Plaintiffs and demands payments for prices that the Plaintiffs and Class never agreed to pay. In the absence of payment, Defendants initiate collections, report the amount charged as an unpaid bill to credit reporting agencies, engage in collection efforts, seek to enforce liens, and initiate lawsuits in state courts, or seek to enforce state law related to the price or services they provide.  Defendants demand payment, initiate collection efforts, and threaten suit in state court for judgments based upon prices never disclosed and agreed upon for the services provided by the Defendants in spite of the fact that Defendants knew, prior to the transportation, the prices they would charge.

---

[4] The text of the ADA reveals that Defendants are not a "common carrier," which is a prerequisite to being an "air carrier." An "air carrier" provides "air transportation" which means "transportation of passengers…as a **common carrier** for compensation." 49 USC §40102(a). A "common carrier" is defined as "any carrier required by law to convey passengers…without refusal if approved fare or charge is paid in contrast to private or contract carrier." BLACK'S LAW DICTIONARY (emphasis added).  Irregular routes indicate that a carrier is not a "common carrier."  The definition from BLACKS was cited with approval in a D.C. Circuit opinion interpreting the term "common carrier," and the case also cited the presumption set by the Supreme Court of "following the common law usage where Congress has employed a term with a well-settled common law meaning."  *CSI Aviation Servs v. United States DOT*, 637 F.3d 408, 415 (D.C. Cir. 2011) (finding that the company in that case was not an "air carrier" because they did not meet the definition of a "common carrier"). The absence of "approved fares or charges," in fact even publicly disclosed prices, and the absence of regular routes with fixed end points, make clear that Defendant is not a "common carrier" and should thus not be deemed an "air carrier."  *Alves v. Pub. Utils. Comm'n*, 260 P.2d 785, 788 (Cal. 1953) (discussing the differences between a "common carrier between fixed termini and over regular routes" and a "highway contract carrier" that does not operate between fixed termini and over regular routes); *Railroad Comm'n of Tex. v. Cent. Freight Lines, Inc.*, 434 S.W.2d 911, 916 (Tex. App. 1968) (discussing the differences between carriers operating over "regular routes" and between fixed termini and those on "irregular routes"). However, the courts have uniformly rejected this analysis, so Plaintiffs do not assert it herein.

108614183.1

15.     Defendants have the option to negotiate an agreed rate with Plaintiffs' insurers. However, Defendants have traditionally failed or refused to enter such negotiations preferring, instead, to submit the price under their agreement to determination by the Court.

16.     Defendants have found they make more money by refusing to negotiate and instead attempting to impose their excessive prices on Plaintiffs after the fact.  The Tenth Circuit described the situation thus: "Unscrupulous pricing behaviors that would not be sustainable in a true free market…are easily perpetuated in the warped market of air-ambulance service." *Eaglemed, LLC v. Cox*, 868 F.3d 893, 903 (10th Cir. 2017).

17.     The type of preliminary approach advanced by Plaintiffs regarding signed written contracts is illustrated by an order from *Wagner v. Summit Air Amb. & Reach Air Med*, 2017 U.S. Dist. LEXIS 177709, 2017 WL 4855391 (D. Mont. Oct. 26, 2017), refusing to dismiss a complaint asserting claims like Plaintiffs herein assert regarding the signed written contract class.  *Wagner* found that the defendant air ambulance companies in that case "knowingly incorporated a consideration term of 'reasonable worth' by their self-imposed and voluntary undertaking to omit a specific consideration term."  Plaintiffs intend to and do assert the same type of claims herein as those asserted in *Wagner* for the signed written contract class.

## PARTIES

18.     Defendant Air Methods Corporation is incorporated under the laws of Delaware with a principal place of business in Englewood, Colorado.

19.     Defendant Rocky Mountain Holdings, LLC, is a limited liability company organized under the laws of Delaware with a principal place of business in Cincinnati, Ohio. On information and belief, Defendant Rocky Mountain Holdings, LLC, regularly conducts business

in Colorado. On information and belief, Defendant Rocky Mountain Holdings, LLC, is a subsidiary of Defendant Air Methods Corporation.

20.　　Plaintiff DeQuasie resides in Oklahoma County, Oklahoma. Documents related to Dequasie's claims are attached as Exhibit 6.

a.　　Plaintiff Richard DeQuasie is the father of H. DeQuasie, a minor.

b.　　On July 1, 2014, Defendants transported H. DeQuasie from a rural area in Haskell County, Oklahoma to St. Francis Hospital in Tulsa, Oklahoma.

c.　　A ground ambulance arrived at the scene first and H. DeQuasie was unconscious when it got there. The EMTs told Plaintiff DeQuasie that his daughter may not survive if transported by ground ambulance, so the EMTs called Defendants.

d.　　Defendants arrived two hours later to pick up H. DeQuasie; she was still unconscious. It would have taken Plaintiff DeQuasie around an hour and a half to drive his daughter to the hospital.

e.　　Plaintiff DeQuasie signed a consent form prior to the transport, but he was not told anything about the price of the transport.

f.　　Following the transport, Defendants billed Plaintiff DeQuasie $43,165.30, which included a "base" charge of $25,221.62 and an additional $17,943.68. The trip was 64 miles, making the charge per mile $280.37.

g.　　Plaintiff DeQuasie was insured by Blue Cross Blue Shield of Oklahoma, which paid $6,969.81.

h.　　Following the payment by BCBS, Defendants attempted collection of the remaining balance from Plaintiff DeQuasie. Defendants were hostile in this process, telling

9

Plaintiff DeQuasie that if he did not pay them at least partial payment, the full balance would be sent to collections. Plaintiff DeQuasie felt threatened by Defendants and ultimately paid $18,847.75. He had to borrow money from family members in order to make this payment, putting a huge financial strain on his family.

i.      The payment by DeQuasie of $25,817.56 greatly exceeded the value of Defendants' services, which Defendants' own vice-president described as around $12,000. See Exhibit 6 (showing payments by DeQuasie) and Exhibit 3 (Defendants' Vice President stating that $12,000 is the "fair" charge for their services).

21.     Plaintiff Dwain Pattillo resides in Seminole County, Oklahoma. Documents related to Patillo's claims are attached as Exhibit 7.

a.      On April 30, 2016, Defendants transported Pattillo from a hospital in Seminole, Oklahoma to St. Anthony Hospital in Oklahoma City, Oklahoma.

b.      Plaintiff Pattillo had a heart attack in his home and was taken by ambulance to a hospital in Seminole. His condition worsened in the few hours he was at the hospital in Seminole, and the doctors determined that he needed to be transferred to St. Anthony for proper treatment. He was given morphine at the hospital in Seminole, so he only vaguely remembers signing a consent form given to him by Defendants. He does not remember being told anything about the transport, including the price of the transport.

c.      Following the transport, Defendants billed Pattillo $47,225.54, which included a "base" charge of $30,354.54 and an additional $16,871.00 for mileage. The trip was 50 miles, making the charge per mile $337.42.

d.      Plaintiff Pattillo was insured by Blue Cross Blue Shield of Oklahoma, which paid $4,889.80, leaving him with a balance of $42,335.74. Plaintiff Pattillo thinks it was wrong of Defendants to take advantage of him while he was under the influence of medication.

e.      Plaintiff Kathleen Pence and her minor child reside in Tulsa County, Oklahoma. Documents related to Pence's claims are attached as Exhibit 5.

f.      On November 16, 2016, Defendants transported Kathleen Pence's newborn baby from St. John's Hospital in Tulsa, Oklahoma to the University of Oklahoma Children's Hospital in Oklahoma City, Oklahoma.

g.      Plaintiff Pence's child was born with severe narrowing of her aortic arch, which required surgery. Her daughter's cardiologist informed Plaintiff Pence that the transport to Children's hospital had already been arranged. The cardiologist subsequently informed Plaintiff Pence that he was not aware that it was a third-party air ambulance transporting her daughter.

h.      Neither Plaintiff Pence nor her husband recall signing any documents from Defendants prior to the transport.

i.      Following the transport, Defendants billed Plaintiff Pence $59,999,[5] which included a "base" charge of $30,354.54 and an additional $29,644.46 for mileage. The trip was approximately 100 miles, making the charge per mile roughly $296.44.

j.      Plaintiff Pence was insured by United Healthcare, which paid $19,713.05 toward the charges. This left Plaintiff Pence with a balance of $40,285.95. The amount paid by Pence's

---

[5] The $59,999 billed to Pence which is just below $60,000 is not coincidental. Defendants understand how outrageous their charges are, so they have a "cap" at any one time above which they will not bill. That "cap" is raised by Defendants periodically, typically in increments of $5,000.

108614183.1

insurer was more than the proper charge for the transport, so Pence should not be subject to Defendants' collection efforts.

k.    Defendants have called Plaintiff Pence multiple times attempting to collect the remaining balance. They have been very hostile in this process, refusing to identify themselves until Plaintiff Pence does and threatening to send the bill to collections if it is not paid.

22.    Plaintiff Kara Ridley resides in Craig County, Oklahoma. Documents related to Ridley's claims are attached as Exhibit 6.

a.    Plaintiff Ridley is the mother of K. Ridley, a minor.

b.    On October 15, 2015, Defendants transported K. Ridley from Integris Grove Hospital in Grove, Oklahoma to St. Francis Hospital in Tulsa, Oklahoma.

c.    K. Ridley was born at Integris Grove Hospital in Grove, Oklahoma. The following day, her physician informed Plaintiff Ridley that her daughter had respiratory problems and Integris Grove Hospital was not equipped to provide her adequate care. The physician told Plaintiff Ridley that her daughter would need to be transported to St. Francis Hospital in Tulsa, and she told the physician to do whatever is best for her daughter.

d.    Plaintiff Ridley did not sign any documents from Defendants prior to the transport.

e.    Following the transport, Defendants billed Plaintiff Ridley $51,798.96, which included a "base" charge of $28,248.21 and an additional $23,550.75 for mileage. The trip was 75 miles, making the charge per mile $314.01.

f.    Plaintiff Ridley was insured by Global Health, which paid $14,942.88. This left Plaintiff Ridley with a balance of $36,856.08.

108614183.1

g.      Defendants presented Plaintiff Ridley with an "Assignment of Benefits" form after transport, which falsely claimed that the form was "***REQUIRED FOR INSURANCE BILLING." See Exhibit 9 at p.9. This misleading form purported to assign all benefits under insurance to Defendants and purports to make the signer personally responsible for any billed charges not paid by their insurer. There was no consideration for the execution of the Assignment of Benefits form, and it was procured with false and misleading claims.

23.     Plaintiff Sandra Saenz resides in Wagoner County, Oklahoma. Documents related to Saenz's claims are attached as Exhibit 7.

a.      On June 9, 2016, Defendants transported Saenz from the site of a car accident outside of Broken Arrow, Oklahoma to St. John Medical Center in Tulsa, Oklahoma.

b.      Plaintiff Saenz was unresponsive at the time of transport, so a consent form was signed by one of Defendants' employees. See Exhibit 7 at p.2.

c.      Following the transport, Defendants billed Plaintiff Saenz $35,415.84, which included a "base" charge of $30,354.54 and an additional $5,061.30 for mileage. The trip was 15 miles, making the charge per mile $337.42.

d.      Plaintiff Saenz was insured by Medicaid, but she has not received any documents from them regarding payment on the balance.

24.     Plaintiff Miranda Taylor resides in Garfield County, Oklahoma. Documents related to Taylor's claims are attached as Exhibit 8.

a.      Plaintiff Taylor is the mother of E. Ramer, a minor.

b.      On November 19, 2013, Defendants transported E. Ramer from Integris Bass Health Center in Enid, Oklahoma to Integris Baptist Medical Center in Oklahoma City, Oklahoma.

13

c.      Ramer had asthma and was suffering from pneumonia. There was no children's ICU at the hospital in Enid, so he had to be transported to a hospital that would have the right accommodations. The nearest hospital that did was in Oklahoma City.

d.      Plaintiff Taylor signed a consent form before the transport, but she was not told anything about what she was agreeing to.

e.      Following the transport, Defendants billed Plaintiff Taylor $37,870.86, which included a "base" charge of $22,419.22 and an additional $15,451.64. The trip was 62 miles, making the charge per mile $249.22.

f.      Plaintiff Taylor was insured by a Blue Cross and Blue Shield Blue Choice Gold policy, which paid $7,546.70. Plaintiff Taylor also was offered a $11,889.67 "discount" on her bill, leaving her with a balance of $18,434.49, which she was unable to pay. Therefore, on information and belief, Defendants now seek to recover their full billed amount.

25.     The average charge for Plaintiffs is nearly $46,000. The "base" and mileage charges for Plaintiffs are shown in the following table:

| Client | "Base" Charge | Miles | $/Mile | Mileage Charge | Total Bill |
|---|---|---|---|---|---|
| DeQuasie | $25,221.62 | 64 | $280.37 | $17,943.68 | $43,165.30 |
| Pattillo | $30,354.54 | 50 | $337.42 | $16,871.00 | $47,225.54 |
| Pence | $30,354.54 | 100 | $296.44 | $29,644.46 | $59,999 |
| Taylor | 22,419.22 | 62 | $249.22 | 15,451.64 | $37,870.86 |
| Ridley | $28,248.21 | 75 | $314.01 | $23,550.75 | $51,798.96 |
| Saenz | $30,354.54 | 15 | $337.42 | $5,061.30 | $35,415.84 |

14

| Client | "Base" Charge | Miles | $/Mile | Mileage Charge | Total Bill |
|--------|--------------|-------|--------|----------------|------------|
| **Average** | $27,825.45 | - | $302.48 | $18,087.14 | **$45,912.58** |

## JURISDICTION AND VENUE

26.    This Court has original jurisdiction pursuant to 28 U.S.C §1331.  Further, the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000.00 and is a class action in which Plaintiffs and members of the Class are citizens of states different from Defendants.

27.    This Court has personal jurisdiction over Defendants because they are authorized to do business and are conducting business throughout the United States, including Colorado; it has sufficient minimum contacts with the various states of the United States, and the State of Colorado; and/or sufficiently avails itself of the markets of the various states of the United States, including Colorado, to render proper the exercise of jurisdiction by this Court.

28.    Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant Air Methods Corporation maintains its principal place of business in this District and is subject to personal jurisdiction in this District and has consented to venue in this District.

29.    Venue is also proper because: (a) Defendants are authorized to conduct business in this District and have intentionally availed itself of the laws and markets within this District; (b) do substantial business in this District; and (c) are subject to personal jurisdiction in this District.

15

## DEFENDANTS' PRIOR STATE COURT LITIGATION

30.    On information and belief, Defendants have filed multiple state-court breach-of-contract suits in multiple states to collect their charges, both by direct actions against a transported person and by way of making claims in interpleader actions.

31.    On information and belief, Defendants have filed proof of claims in multiple bankruptcy cases asserting a right to be paid based on state-law breach-of-contract theories.

32.    On information and belief, Defendants have filed claims in estate cases to recover their charges for transportation of a deceased person in multiple cases.

33.    On information and belief, Defendants have sought more compensation from Medicare, Medicaid and Tricare insureds than is allowed under the relevant payment schedule for providers that accept assignment of benefits from Medicare, Medicaid and Tricare patients.

34.    On information and belief, Defendants have sought more compensation from patients with commercial insurance, employer-sponsored health benefits plans, and other non-governmental third-party payers than what the insurance industry has determined to be the uniform, customary, and reasonable rate in each locality.

35.    On information and belief, Defendants have compelled class members to enter into contracts to pay their full billed amount in monthly installments paid over decades with interest.

36.    On information and belief, Defendants have enforced, or sought to enforce, subrogation claims or liens against personal injury claims or recoveries seeking their full billed amounts.

37.    Defendants' collection efforts against Plaintiffs were ongoing at the time this action was filed, and Defendants will continue efforts to collect their improperly billed amounts in the

108614183.1

absence of relief granted by the Court in this action. There is a live and ongoing dispute between Plaintiffs and Defendants.

## Constitutional Issues

38.    First, Plaintiffs note that there is a straightforward legal path to address this dispute in the context of an agreement undertaken by the parties with the understanding that the Court would set the price term, so it is unnecessary to even reach the difficult constitutional problems presented by the positions previously taken by air ambulance companies.  However, since the issues have been reached in prior cases, the following constitutional claims are asserted in the alternative.

39.    The legal position of air ambulance companies in prior cases has been simple: under the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) ("ADA"), air ambulance companies claim they are vested by the ADA with plenary power to set whatever price they choose for transportation of patients *in extremis* who have no opportunity to decide whether they want or need transportation, and this Court, and all other courts, are powerless to decide issues related to the arbitrary and inflated prices imposed after-the-fact by Defendants.

40.    Plaintiffs' position can also be simply stated:  the air ambulance companies' assertion cannot be right about what the law is.  It is fundamentally unfair, and shocking to the conscience, that persons who are transported while gravely injured by a company called to respond without their knowledge or express or informed consent can be charged whatever price Defendants choose, and there is zero opportunity for Plaintiffs to challenge Defendants' purported plenary power.  Even actions by the other branches of the federal government are subject to judicial review, and it is beyond the pale to assert that Defendants' undisclosed prices are not.

108614183.1

41.     **Seventh Amendment – Right to Jury Trial.**  Defendants assert that they have the right to seek compensation from their clients based on various state law theories including, but not limited to, express or implied state law contract, but amazingly then assert that courts have no right to question the air ambulance company's arbitrarily-billed charges.

> [Court]: Your company can bill what it wants and collect based on…some…state law theory, but…[transported patients] can't challenge the bill under that same theory.

> [Counsel for Air Methods]: That is the nature of ADA preemption under the law as it's written now.

> [Court]: That's crazy.

Trans. of Sept. 27, 2017 hearing in *Scarlett et al. v. Air Methods Corp.* (D. Colo. Case No. 16-CIV-2723-RBJ).

42.     The *Wagner* court found that a "circular logic permeates these arguments" made by air ambulance companies.  *Wagner* at pp. 5-6.

43.     Defendants' one-way-agreement argument violates Plaintiffs' Seventh Amendment right to a jury. "No question that a breach of contract seeking money damages was triable at law in 1791" so a party joined in such an action would be entitled to a jury.  *Gangitano v. NN Inv'rs Life Ins.*, 773 F. Supp. 342, 343-44 (S.D. Fla. 1990); *see also OHC Liquidation Trust v. Credit Suisse*, 378 B.R. 59 (D. Del. Bankr. 2007) (claims seeking "money damages for breach of express or implied contracts are clearly legal") (quoting from *Donovan v. Robbins*, 579 F. Supp. 817, 822 (N.D. Ill. 1984)).  "As a general rule, monetary relief is legal…and that claims…[have]

a right to trial by jury."  *Control Ctr, LLC v. Lauer*, 288 B.R. 269, 278 (M.D. Fla. 2002) (*citing Feltner v. Colum. Pict. Tele., Inc.*, 523 U.S. 340, 352 (1988)).

44.    The law cannot constitutionally provide Defendants with the right to sue Plaintiffs to recover damages under a legal breach of express or implied contract theory and, at the same time, deny Plaintiffs  the right to a jury trial to contest the arbitrarily-imposed-after-the-fact prices Defendants seek to recover. Such a circumstance unconstitutionally denies Plaintiffs the right to a jury trial on the legal claims at issue.

45.    Defendants argue they are entitled to recover arbitrarily-set charges under an implied contract theory under state law, but the ADA precludes Plaintiff from challenging the rates Defendants impose – the one-way implied contract argument. The radical proposition advanced by Defendants indicates a clear problem: Defendants' position deprives Plaintiffs of the right to a jury trial, in violation of the Seventh Amendment to the Constitution:

> On the common law side of the federal courts, the aid of juries…is required by the Constitution itself. Congress may devise novel causes of action involving public rights free from the strictures of the Seventh Amendment…But it lacks the power to strip parties contesting matters of private right of their constitutional right to a trial by jury.
>
> *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 51–52 (1989).

46.    "There is certainly no question that a breach of contract action seeking money damages only was triable at law in 1791. Since Plaintiffs' cause of action…is essentially a contract action, Plaintiffs are entitled to a trial by jury…." *Gangitano v. NN Inv'rs Life Ins. Co., Inc.*, 733 F. Supp. 342, 343–44 (S.D. Fla. 1990).

47.    If Defendants are right that the unique set of facts imposes on injured or unconscious patients, with little or no choice to enter into a transaction with Defendants, and zero information on the price they will be charged, the obligation to pay whatever outrageous rates Defendants impose, with no right to jury trial, then the ADA is unconstitutional as applied here because it denies Plaintiffs their right to a jury trial.

48.    Breach of implied contract claims are legal, and Plaintiffs have a right to jury trial regarding them. *Donovan v. Robbins*, 579 F. Supp. 817, 822 (N.D. Ill. 1984) (claims seeking "money damages for breach of express or implied contracts . . . are clearly legal and the Seventh Amendment would require a jury trial as to them"); 8-38 MOORE'S FED. PRACTICE § 38.30 ("Actions for money damages for breach of contract are legal in nature and are triable to a jury.") Plaintiffs have the right to a judicial declaration of their legal rights, as they have asserted in this action, and the reverse is also true; the right to a jury trial applies to Defendants as parties seeking to collect a debt. *Elm Ridge Exploration Co., LLC v Engle*, 721 F.3d 1199, 1222 (10th Cir. 2013).

## CLASS ACTION ALLEGATIONS

49.    This action is brought and may be maintained as a class action pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3) are met with respect to the Class defined as follows:

> **Signed Contract Class**. All persons billed by Defendants, or who paid a bill from Defendants, for air medical transport that Defendants carried out from a location in the United States without an express price term, prior to transport, setting the specific mileage and base rate charges.

108614183.1

**Non-Contract Transport Class**. All persons billed by Defendants, or who paid a bill from Defendants, for air medical transport that Defendants carried out from a location in the United States without a contract signed by Plaintiff or their agent, prior to transport.

Excluded from both Classes are Defendants, any entity in which Defendants has a controlling interest or which have a controlling interest of Defendant, and Defendants' legal representatives, assigns and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

50.    Plaintiffs expect to seek certification of the Signed Contract Class under Rule 23(b)(3) and of the injunctive classes under (b)(1) or (b)(2).

51.    The Classes will include only persons having viable claims under the applicable statute of limitation, and, based on Plaintiffs' claims for breach of express contract formed in Oklahoma, that period is five years. For the Non-Contract Transport Class, the Oklahoma statute of limitation is arguably two years. However, both Classes claim the benefit of American Pipe tolling as a result of previous class cases filed against Defendants. See *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).

52.    Rule 23 permits Plaintiffs the right to redefine the Classes prior to class certification.

53.    The members of the Classes are so numerous that joinder of all members is impracticable. The exact number of Class Members is unknown as such information is in the exclusive control of Defendants.  However, due to the nature of the trade and commerce

108614183.1

involved, Plaintiffs believe the Proposed Classes consists of thousands of Class Members. Defendants themselves claim that they transport more than 100,000 patients each year, operating out of more than 300 bases in the 48 contiguous states. See: https://www.airmethods.com/about-us

54.    Common questions of law and fact affect the rights of each Class Member and a common relief by way of declaratory judgment and injunction, including at least the following:

a.    Did Defendants and Plaintiff who signed a contract that did not specify a price have an agreement for Plaintiff to pay a price determined by the Court for Defendants' patient transportation services?

b.    Did the Defendants have a fixed mileage price and "helicopter rotor base" price for the transportation before Plaintiff and Class Members were transported?

c.    Did Defendants communicate their fixed mileage price and "helicopter rotor base" price for the transportation to Plaintiffs, actually or constructively, before the patients were transported?

d.    Did Defendants demand payment of a fixed mileage price and "helicopter rotor base" price for the transportation of patients when the mileage and helicopter rotor base prices sought had not been expressly agreed to by Plaintiff?

e.    What voluntary undertakings did Defendants accept regarding transportation of Plaintiff?

f.    Is there any basis for Defendants to recover its billed fees other than via state law claims for express signed contract?

108614183.1

g.      Whether Defendants could contract around the Court supplying the price by, for example: i) publicly disclosing their prices, for example on their web site; ii) disclosing pricing on their written contracts; or iii) negotiating with Plaintiff's insurers on an agreed rate?

h.      Whether Defendants undertook an agreement with Plaintiffs who signed an agreement with the knowledge that the absence of an express price term necessarily required the Court to provide a price?

i.      Whether the Court should grant injunctive relief to Plaintiffs who do not have a signed contract with Defendants to prevent the all further collection efforts by Defendants?

j.      If Defendants assert the same arguments advanced by them in previous litigation, whether the positions asserted by Defendants violate Plaintiff's 's right to a jury trial under the Seventh Amendment or denies them Due Process.

k.      Whether Defendants should be enjoined from seeking to collect amounts not agreed to by the parties.

55.     The claims and defenses of the named Plaintiffs are typical of the claims and defenses of the Classes.  For the Signed Contracts Class, Defendants have sought to impose undisclosed, arbitrary prices by Defendants on Plaintiffs who signed an agreement for transportation mileage and "helicopter rotor base" in violation of the parties' agreement for the Court to provide the price term. For the Non-Contract Class Defendants sought to collect an alleged debt for which they have no valid basis for collection since any efforts to impose a price by any court would be preempted under the ADA.

56.     The named Plaintiffs will fairly and adequately assert and protect the interests of the Classes. Specifically, they have hired attorneys who are experienced in prosecuting class

108614183.1

action claims and will adequately represent the interests of the Classes. Neither the named Plaintiffs nor putative class counsel have a conflict of interest that will interfere with the maintenance of this class action.

57.    A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a.    The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

b.    Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

c.    Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

d.    Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

e.    There are no unusual legal or factual issues which would create manageability problems; and

f.    Class adjudication is superior to individual adjudication of the claims at issue in this case.

24

## CAUSES OF ACTION
### COUNT I
**Breach of Contract Regarding Signed Contract Class**

58.     Plaintiffs incorporate the paragraphs outside of this Count as though set forth herein.

59.     Prior to the receipt of services, Defendants chose to engage in no disclosure or negotiation of contract terms. Instead, Defendants chose a course of allowing the Court to set the contract price.

60.     The agreement between Defendants and the Signed Contract Class did not mention the price to be charged for the services. Plaintiffs expressly agreed to pay Defendants, but the Defendants' form contract left the price as a term to be set by the Court.

61.     Prior to sending Plaintiffs a bill, Defendants never disclosed the rates they charge for their services.  As these agreements contained an undefined price term, they constituted an undertaking to provide services with the understanding that the price would be a reasonable amount set by the Court.

62.     Members of the Signed Contract Class, to the extent they had any understanding at the time of contracting, had a reasonable expectation that Defendants would charge a reasonable amount for their services.

63.     Instead of charging the Signed Contract Class properly for their services, Defendants breached the agreement by charging inflated and exorbitant prices that bear no reasonable relationship to the value of the services rendered.

64.     By any measure, the prices Defendants charged were unreasonable. These prices far exceeded the amounts paid by third party payers, including the "uniform, customary, and

108614183.1

reasonable" amount paid by the health insurance companies or employer-sponsored health benefits plans to out of network providers, and the amount paid by Medicare, Medicaid and other government payers for the same services. The prices are nearly four times what Defendants' own executives said was a "fair" price.

65.     As a result of Defendants' breach of the agreements, members of the Signed Contract Class have been injured in the amount at least equal to the overcharges levied by Defendants, and any other consequential damages flowing from the breaches.  Plaintiffs and members of the Signed Contract Class are therefore entitled to restitution remedies, consequential damages, pre-judgment interest and such other relief as set forth in the prayer below.

## COUNT II
### Injunctive and Declaratory Relief Pursuant to 28 U.S.C. § 2201

66.     Plaintiffs incorporate the paragraphs outside of this Count as though set forth herein.

67.     28 U.S.C §2201 provides as follows:

In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

68.     Prior to the provision of services, no negotiation of contract terms regarding the price of Defendants' transportation services took place and Plaintiffs, the Class and Defendants did not enter into an express agreement on the price Defendants would charge, and the Plaintiffs/Class would pay for transport services.

108614183.1

69.     In all instances, Defendants seek assistance from the Plaintiffs to obtain third-party payment for the charged amounts.

70.     If there is no third-party payment or that payment is less than the charged amounts, Defendants demand payment ("balance bills"), threaten adverse consequences, and initiate detrimental collection efforts against Plaintiffs.

71.     In the event Plaintiffs do not pay Defendants the charged amounts, Defendants threaten collection, report the unpaid charged amount as bad debt to credit reporting agencies, accrue interest and fees, and ultimately may file suit in state court or claims in bankruptcy for the amounts charged to coerce Plaintiffs  to make payments that they do not owe, and Defendants cannot legally collect.

72.     Plaintiffs seek injunctive and declaratory relief for the purposes of determining questions of actual controversy between the Plaintiffs, the Class and Defendants.  The exhibits to this Complaint show Defendants' extensive efforts to collect their alleged debt from Plaintiffs, and Defendants have expressed an intent to engage in ongoing collection efforts.

73.     Defendants have acted in a uniform manner in failing to disclose and negotiate the price they would charge for transportation services before rendering services, balance billing the Plaintiffs in the event the charged amounts are not paid, and engaging in collection efforts, including litigation.

74.     Defendants have acted or refused to act on grounds that apply generally to Plaintiffs such that declaratory relief to determine whether Defendants and Plaintiffs, have an enforceable agreement, the enforcement of which is not preempted by the ADA, so that final injunctive relief

or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

75.     Defendants have demanded payment of the charged amounts from the Plaintiffs and have threatened or initiated collection efforts against the Plaintiffs.

76.     There is an actual dispute and controversy between Plaintiffs, and Defendants as to whether Defendants can demand payment for services concerning which no express price was agreed, can engage in collection efforts where no legally enforceable contract exists, can impose interest and costs of collection on Plaintiffs, and whether any attempt by Defendants to collect the amounts charged under the circumstances is prohibited by the preemption provisions of the ADA.

77.     Plaintiffs have no adequate remedy at law.

78.     Plaintiffs seeks declarations to determine the rights of the Class Members, in particular:

a.      The Court finds that Defendants chose not to enter into any express and informed contract for Plaintiffs to disclose prices charged by Defendants for the transportation services they provided;

b.      If the Court finds that the parties did not voluntarily undertake to have the Court set the price, then the Court should find that the ADA, 49 U.S.C. § 41713 preempts Defendants from seeking judicial enforcement or judgment against Plaintiffs  where Defendants and the Plaintiffs, did not agree to pay the prices charged prior to the transportation of patients because such action by a court would impose terms on the parties that they did not voluntarily undertake;

c.      The Court finds that Defendants has no legal enforceable right to collect the prices charged in court proceedings, or other collection efforts, and Plaintiffs, have no obligation to pay Defendants the prices charged.

d.      If Defendants assert the same arguments advanced by other air ambulance companies in previous cases, the Court finds that the positions asserted by Defendants violate Plaintiffs' right to a jury trial under the Seventh Amendment and/or deny them Due Process under the Fifth Amendment.

e.      Plaintiffs  further seek a prospective order from the Court requiring Defendants to: (1) cease charging for the transporting of patients without an express agreement or full disclosure as to the rates for mileage and helicopter rotor base; and (2) to cease Defendants' attempts to collect outstanding bills for which no agreement as to price exists from Plaintiffs and the Members of the Proposed Class, except at a price that Defendants have undertaken for the Court to set.

79.      Plaintiffs and the Proposed Class seek the disgorgement by Defendants of all sums collected by the Defendants from third-party payors who Defendants did not have a preferred provider contract with, who have paid any amounts charged by the Defendants and other relief as set forth in the prayer below.

80.      Defendants' collection efforts damage the credit or financial health of Plaintiffs, cause them to incur legal fees and litigation expenses, impede their ability to resolve personal injury claims, force them to consider filing or file bankruptcy, and expose Plaintiffs  to claims for unlawful rates, interest on unpaid Defendants' charges and vexing and harassing collection efforts. As a result of Defendants' practices as described above, Plaintiffs have suffered, and will continue to suffer, irreparable harm and injury.

108614183.1

81.     Accordingly, Plaintiffs respectfully ask the Court to enter a permanent injunction ordering Defendants to cease and desist their practice of charging Plaintiffs for transporting patients in any amount greater than the reasonable amount set by the Court.

## PRAYER FOR RELIEF

**THEREFORE**, Plaintiffs, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

a)     Entering an order certifying the Classes (and subclasses, if applicable), designating Plaintiffs as the class representatives, and designating the undersigned as class counsel;

b)     Awarding damages and consequential damages, as appropriate;

c)     Awarding Plaintiffs all costs and disbursements, including attorneys' fees, experts' fees, and other class action related expenses;

d)     Imposing a constructive trust, where appropriate, on amounts wrongfully collected from Plaintiffs pending resolution of their claims herein;

e)     Issuing appropriate declaratory and injunctive relief to declare the rights of Plaintiffs including, but not limited to a declaration that, absent a signed agreement, Defendants are precluded from collecting anything from transported patients;

f)     Finding that Defendants have breached the terms of its signed agreement by refusing to bill and accept a price established by the Court in the absence of an express price term in signed contracts;

g)     Awarding pre-judgment and post-judgment interest; and

h)     Granting such further relief as the law allows and the Court deems just.

108614183.1

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all claims and issues.

DATED this 5th day of July 2019.

LEWIS ROCA ROTHGERBER CHRISTIE LLP


*s/ Abby C. Harder*
Michael D. Plachy, Esq.
Abby C. Harder, Esq.
1200 Seventeenth Street, Suite 3000
Denver, CO 80202-5835
Tel.:    (303) 623.9000
Fax:    (303) 623.9222
Email:  mplachy@lrrc.com
        aharder@lrrc.com


EDWARD L. WHITE, P.C.

*s/ Edward L. White*
Edward L. White, Esq.
829 East 33rd Street
Edmond, Oklahoma 73013
Tel.: (405) 810-8188
Fax: (405) 608-0971
Email: ed@edwhitelaw.com

108614183.1